FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT
MAY 14 2009
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

DANIEL K. CRANE-HIRSCH
Daniel.Crane-Hirsch@usdoj.gov
Trial Attorney
Office of Consumer Litigation, U.S. Department of Justice
PO Box 386
Washington, DC 20044-0386
Telephone: 202-616-8242
Fax: 202-514-8742

THOMAS P. O'BRIEN
United States Attorney
LEE WEIDMAN
Chief, Civil Division
GARY PLESSMAN
Assistant United States Attorney
Chief, Civil Fraud Section
California State Bar No. 101233
Room 7516, Federal Building
300 N. Los Angeles St.
Los Angeles, CA 90012
Telephone: (213) 894-2474
Facsimile: (213) 894-2380
E-mail: gary.plessman@usdoj.gov
Attorneys for Plaintiff UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV, Inc., a California Corporation;<br><br>VOICECAST SYSTEMS, INC., also d/b/a INTOUCH SOLUTIONS, an Illinois Corporation<br><br>MICHAEL KURTZ, individually and as an officer of Voicecast Systems, Inc.<br><br>KEYVAN SAEDI, individually and as an officer of Voicecast Systems, Inc.,<br><br>Defendants. | Civ. No. 09-02605 DOC (ANx)<br><br>**STIPULATED JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AGAINST DIRECTV, INC.** |

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), commenced this action by filing the complaint herein, and Defendant DIRECTV, Inc. ("DIRECTV") has waived service of the summons and the complaint. The parties, represented by attorneys whose names appear hereafter, have agreed to settlement of this action.

**THEREFORE,** on the joint motion of the parties, it is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

**FINDINGS**

1. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355 and 15 U.S.C. §§ 45(m)(1)(A), 53(b), 56(a), and 57b.

2. Plaintiff and DIRECTV consent to jurisdiction and venue in this District.

3. The activities of DIRECTV are in or affecting commerce, as defined in Section 4 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 44.

4. The complaint states a claim upon which relief can be granted against DIRECTV, under Sections 5(a), 5(m)(1)(a), 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(a), 53(b), and 57(b).

5. DIRECTV hereby waives all rights to appeal or otherwise challenge or contest the validity of this Order.

6. DIRECTV agrees that this Order does not entitle it to seek or obtain attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, and it further waives any rights to attorneys' fees that may arise under said provision of law.

7. Entry of this Order is in the public interest.

**DEFINITIONS**

For purposes of this Order, the following definitions shall apply:

1.    "Authorized Marketer" means a business or other entity with whom DIRECTV has entered into an agreement authorizing the solicitation of DIRECTV goods or services.

2.    "Authorized Telemarketer" means a person that has received express, written authorization from DIRECTV to use telemarketing to market DIRECTV goods or services.

3.    "Customer" means any person who is or may be required to pay for goods or services offered through telemarketing.

4.    "Defendant" or "DIRECTV" means DIRECTV, Inc. and its successors and assigns.

5.    "DIRECTV goods or services" means satellite programming and all other goods or services.

6.    "Established business relationship" means a relationship between the seller and a person based on: (a) the person's purchase, rental, or lease of the seller's goods or services or a financial transaction between the person and seller, within the eighteen (18) months immediately preceding the date of the telemarketing call; or (b) the person's inquiry or application regarding a product or service offered by the seller, within the three months immediately preceding the date of a telemarketing call.

7.    "National Do Not Call Registry" means the National Do Not Call Registry maintained by the Federal Trade Commission pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B).

8.    "Outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

9.    "Person" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

10.    "Prior Injunction" means the Stipulated Judgment and Order for Permanent Injunction Against DIRECTV, Inc., entered on December 14, 2005 in United States v. DIRECTV, Inc., et al., Civ. No. SACV05-1211 DOC (C.D. Cal.).

11.    "Seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration, whether or not such person is under the jurisdiction of the Federal Trade Commission.

12.    "Telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

13.    "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

14.    The "Telemarketing Sales Rule" or "Rule" means the FTC Rule entitled "Telemarketing Sales Rule," 16 C.F.R. § 310, attached hereto as Appendix A, or as it may be amended.

## ORDER

## I. PROHIBITION AGAINST AN ABUSIVE PATTERN OF TELEMARKETING CALLS

**IT IS HEREBY ORDERED** that, in connection with telemarketing, DIRECTV and its officers, agents, servants, employees, and all those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly through Authorized Telemarketers, are hereby permanently restrained and enjoined from engaging in or assisting others in engaging in violations of the Telemarketing Sales Rule, including but not limited to:

A. Initiating any outbound telephone call to a person when:

1. that person previously has stated to DIRECTV or an Authorized Telemarketer that he or she does not wish to receive an outbound telephone call made by or on behalf of DIRECTV, unless the provisions of 16 C.F.R. § 310.4(b)(3) (the Telemarketing Sales Rule Do Not Call safe harbor) are met;

2. that person's telephone number is on the National Do Not Call Registry, unless:

a. DIRECTV has obtained the express agreement, in writing, of such person to place calls to that person, clearly evidencing such person's authorization that calls made by or on behalf of DIRECTV may be placed to that person, and including the telephone number to which the calls may be placed and the signature of that person; or

b. DIRECTV has an established business relationship with such person, and that person has not stated to DIRECTV or an Authorized Telemarketer that he or she does not

wish to receive outbound telephone calls pursuant to § 310.4(b)(1)(iii)(A) of the Telemarketing Sales Rule; or

  c.  The provisions of 16 C.F.R. § 310.4(b)(3) (the Telemarketing Sales Rule Do Not Call safe harbor) are met.

B.  Abandoning any outbound telephone call to a person by failing to connect the call to a representative within two (2) seconds of the person's completed greeting, unless the following four (4) conditions are met:

  1.  DIRECTV or an Authorized Telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured per day per calling campaign;

  2.  DIRECTV or an Authorized Telemarketer, for each telemarketing call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting;

  3.  Whenever a representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, DIRECTV or an Authorized Telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed; and

  4.  DIRECTV or an Authorized Telemarketer retains records, in accordance with 16 C.F.R. § 310.5(b)-(d), establishing compliance with the preceding three conditions.

C.  Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance

with the call abandonment safe harbor in 16 C.F.R. § 310.4(b)(4)(iii), except as allowed by the provisions of 16 C.F.R. § 310.4(b)(1)(v).

D.   If the Commission amends the Telemarketing Sales Rule, in whole or part, DIRECTV and its Authorized Telemarketers shall, in connection with telemarketing DIRECTV goods or services, comply fully and completely with all applicable requirements of the amended Rule, on and after the effective date of any such amended Rule.

## II.  MONITORING OF AUTHORIZED TELEMARKETERS

**IT IS FURTHER ORDERED** that DIRECTV and its officers, agents, servants, employees, and all those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby permanently restrained and enjoined from:

A.   Failing to conduct a reasonable due diligence investigation of a person before making the person an Authorized Telemarketer, to ensure that the person has established and actively enforces effective policies and procedures for compliance with the Telemarketing Sales Rule, including procedures to prevent the initiation of outbound telemarketing calls to numbers on the National Do Not Call Registry, in violation of 16 C.F.R.§ 310.4(b)(1)(iii), and to prevent call abandonment, in violation of § 310.4(b)(1)(iv).

B.   Failing to have a written contract with each Authorized Telemarketer.

C.   Failing to include, in the written contract with each Authorized Telemarketer, requirements that the Authorized Telemarketer comply with all provisions of the Telemarketing Sales Rule, including, but not limited to, § 310.4 (b)(1)(iii) and (iv).

D.   Failing to monitor outbound telemarketing campaigns conducted by an Authorized Telemarketer to determine whether:

1.  Any telemarketing call is placed only to a telephone number that is –

    a.  not on the National Do Not Call Registry and not on an individual do not call list maintained by DIRECTV or any of its Authorized Telemarketers; or

    b.  on the National Do Not Call Registry, provided that the customer either has given his or her express agreement in writing to receive telemarketing calls at that number, or has an established business relationship with DIRECTV.

2.  Not more than three percent (3%) of telemarketing calls answered by a person, measured per day per calling campaign, are being connected to a prerecorded message in lieu of a live sales representative, pursuant to 16 C.F.R. §§ 310.4(b)(1)(iv) and 310.4(b)(4).

E.  Providing any monetary compensation for any telemarketing related sales or activities, including but not limited to hourly rates of pay or commissions, to any Authorized Telemarketer after DIRECTV knows or reasonably should have known that such Authorized Telemarketer has, in connection with telemarketing DIRECTV goods and services;

1.  failed to fulfill contract requirements with respect to compliance with the Telemarketing Sales Rule; or

2.  violated the Telemarketing Sales Rule.

F.  Continuing to do business with any Authorized Telemarketer that fails to fulfill contract requirements with respect to compliance with the Telemarketing Sales Rule, or violates any provision of the Telemarketing Sales Rule. Provided, however, that this Paragraph does not prohibit DIRECTV from entering into a subscription agreement with a consumer who was called by an Authorized

Telemarketer that: fails to fulfill contract requirements with respect to compliance with the Telemarketing Sales Rule, violates any provision of the Telemarketing Sales Rule, or fails to comply with Paragraph I of this Order.

## III. MONITORING OF AUTHORIZED MARKETERS

**IT IS FURTHER ORDERED** that DIRECTV and its officers, agents, servants, employees, and all those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby permanently restrained and enjoined from:

A. Failing to monitor Authorized Marketers to determine whether they are initiating contact with consumers through outbound telephone calls to telemarket DIRECTV goods or services; and

B. Doing business with any Authorized Marketer and providing any monetary compensation, including but not limited to hourly rates of pay or commissions, to any Authorized Marketer who DIRECTV knows or should know engages in the following conduct:

1. initiating contact with consumers through outbound telephone calls to telemarket DIRECTV goods or services without express, written authorization from DIRECTV; or

2. entering into any type of agreement with any other person to initiate contact with consumers through outbound telephone calls to telemarket DIRECTV goods or services. Provided, however, this Paragraph does not prohibit DIRECTV from entering into a subscription agreement with a consumer who was called in violation of the Telemarketing Sales Rule, or by a person who has engaged in any of the conduct described in subparagraph B of this Paragraph of this Order.

## IV. ADDITIONAL MONITORING

**IT IS FURTHER ORDERED** that DIRECTV and its officers, agents, servants, employees, and all those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby permanently restrained and enjoined from failing to take the following actions with regard to Authorized Telemarketers and Authorized Marketers:

A. DIRECTV shall develop, implement, adequately staff, and continuously operate and maintain, a system to receive and retain complaints related to telemarketing of DIRECTV goods and services that are received by telephone, mail, and e-mail. DIRECTV shall take all reasonable steps to obtain, record, retain, and make easily accessible to DIRECTV and, upon reasonable request, the FTC, all relevant information regarding all complaints relating to telemarketing of DIRECTV goods or services, including but not limited to: (1) the consumer's name, address, and telephone number; (2) the substance of the complaint, including the name of any person referenced; (3) the nature and result of any investigation conducted concerning the complaint; (4) each response to the complaint and the date of such response to the complaint; (5) any final resolution of the complaint, and the date of such resolution; (6) in the event of a denial of any resolution, the reason for the denial; (7) the name, telephone number, and address of the Authorized Telemarketer or Authorized Marketer which made the call that was the basis for the complaint; (8) the date of the call; and (9) any relevant information for determining whether a violation of the Telemarketing Sales Rule has occurred. The system for complaints related to telemarketing shall be capable of producing and shall produce monthly reports that show (1) the aggregate number of complaints relating to telemarketing, (2) the

total number and type of telemarketing complaints for each Authorized Telemarketer, and (3) the total number and type of telemarketing complaints for each Authorized Marketer.

B. DIRECTV shall promptly investigate each consumer complaint relating to telemarketing or the Telemarketing Sales Rule and shall take all reasonable steps to identify the person whose activities prompted the complaint.

## V. PROHIBITION ON ASSISTING AND FACILITATING

**IT IS FURTHER ORDERED** that DIRECTV and its officers, agents, servants, employees, and all those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby permanently restrained and enjoined from providing substantial assistance and support to any telemarketer when DIRECTV knows or consciously avoids knowing that the telemarketer is engaged in one or more violations of the Telemarketing Sales Rule.

## VI. CIVIL PENALTY

**IT IS HEREBY ORDERED** that judgment in the amount of two million, three hundred and ten thousand dollars ($2,310,000.00) is hereby entered against DIRECTV as a civil penalty pursuant to Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

A. Within five (5) days of receipt of notice of entry of this Order, DIRECTV shall transfer the civil penalty payment in the form of a wire transfer or certified or cashier's check made payable to the Treasurer of the United States. The check or written confirmation of the wire transfer shall be delivered to: Director, Office of Consumer Litigation, U.S. Department of Justice Civil Division, P.O. Box 386, Washington, DC 20044. The cover letter accompanying the check

shall include the title of this litigation and a reference to DJ 102-3542.

B. In the event of default on the payment required to be made by this Paragraph, the entire unpaid civil penalty, together with interest computed under 21 U.S.C. § 1961 – accrued from the date of default until the date of payment – shall be immediately due and payable.

C. DIRECTV shall cooperate fully with Plaintiff and the Commission and their agents in all attempts to collect the amount due pursuant to this Paragraph if DIRECTV fails to pay fully the amount due at the time specified herein. In such an event, DIRECTV agrees to provide Plaintiff and the Commission with their federal and state tax returns for the preceding two years, and to complete standard financial disclosure forms fully and accurately within ten (10) business days of receiving a request from Plaintiff or the Commission to do so. DIRECTV further authorizes Plaintiff and the Commission to verify all information provided on its financial disclosure forms with all appropriate third parties, including but not limited to financial institutions.

D. In accordance with 31 U.S.C. § 7701, DIRECTV is hereby required, unless it has done so already, to furnish to Plaintiff and the FTC with its taxpayer identification number (employer identification number), which shall be used for purposes of collecting and reporting on any delinquent amount arising out of DIRECTV's relationship with the government.

E. Defendant relinquishes all dominion, control, and title to the funds paid to the fullest extent permitted by law. Defendant shall make no claim to nor demand return of the funds, directly or indirectly, through counsel or otherwise.

F. This judgment represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and, therefore, is not subject to discharge under the Bankruptcy Code pursuant to 11 U.S.C. § 523(a)(7). DIRECTV agrees that the facts as alleged in the complaint filed in this action shall be taken as true, without further proof, in any subsequent civil litigation filed by or on behalf of the Commission to enforce its rights to any payment or money judgment pursuant to this Order.

G. Proceedings instituted under this Paragraph are in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including any other proceedings the Commission may initiate to enforce this Order.

## VII. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order,

A. Within thirty (30) days of receipt of written notice from a representative of the Commission, DIRECTV shall submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in DIRECTV's possession or direct or indirect control to inspect the business operation.

B. In addition, the Commission is authorized to monitor compliance with this Order by all other lawful means, including, but not limited to, the following:

1. obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45; and

2. posing as consumers and suppliers to DIRECTV, its employees, or any entity managed or controlled in whole or in part by it, without the necessity of identification or prior notice.

C. DIRECTV shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order. The person interviewed may have counsel present.

***Provided, however,*** that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## VIII. COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A. For a period of five (5) years from the date of entry of this Order, DIRECTV shall notify the Commission of any changes in the corporate structure of any business entity that it directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to such change, ***provided*** that, with respect to any proposed change in a corporation about which DIRECTV learns less than thirty (30) days

prior to the date such action is to take place, it shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.   One hundred eighty (180) days after the date of entry of this Order, DIRECTV shall provide a written report to the FTC, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which it has complied and is complying with this Order.  This report shall include, but not be limited to:

1.   A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Section titled "Distribution of Order;"

2.   Any other changes required to be reported under Subsection A of this Paragraph;

3.   A list of the telephone numbers that DIRECTV or any Authorized Telemarketers used or uses in telemarketing since entry of this Order and the name and address of the phone company providing service, including any telephone number programmed to be transmitted for caller identification purposes;

4.   A list of all subscription account numbers DIRECTV or any Authorized Telemarketers have used, uses, or have obtained in connection with the National Do Not Call Registry since entry of this Order; and

5.   A list of all Authorized Telemarketers and Authorized Marketers, including the trade names and any other names under which, to DIRECTV's knowledge, these entities do business.

C.   DIRECTV shall notify the Commission of its filing of a bankruptcy petition within fifteen (15) days of filing.

D. For the purposes of this Order, DIRECTV shall, unless otherwise directed by the Commission's authorized representatives, send by overnight courier all reports and notifications required by this Order to the Commission, to the following address:

Associate Director for Enforcement
Federal Trade Commission
600 Pennsylvania Avenue, N.W., Room NJ-2122
Washington, D.C. 20580
RE: FTC v. DIRECTV

***Provided*** that, in lieu of overnight courier, DIRECTV may send such reports or notifications by first-class mail, but only if it contemporaneously sends an electronic version of such report or notification to the Commission at: DEBrief@ftc.gov.

E. For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with DIRECTV.

## IX. RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, DIRECTV and its officers, agents, servants, employees, and all those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain all records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

## X. DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that, for a period of three (3) years from the date of entry of this Order, DIRECTV shall deliver copies of this Order as directed below:

A. DIRECTV must deliver a copy of this Order to all officers and directors. DIRECTV shall also deliver a copy of this Order to all of its employees who are responsible for telemarketing DIRECTV goods or services, handling telemarketing complaints, or maintaining records relating to telemarketing complaints or other telemarketing activities. For the current officers, directors, and employees described above, delivery of this Order shall be within five (5) days of service of this Order on DIRECTV. For new personnel, delivery shall occur prior to them assuming their responsibilities with DIRECTV. For any business entity resulting from any change in structure set forth in Paragraph VIII.A, delivery shall be at least ten (10) days prior to the change in structure.

B. DIRECTV must secure a signed and dated statement acknowledging receipt of this Order, within thirty (30) days of delivery, from all persons receiving a copy of this Order pursuant to this Paragraph.

## XI. ACKNOWLEDGMENT OF RECEIPT OF ORDER

**IT IS FURTHER ORDERED** that DIRECTV, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## XII. EFFECT ON PRIOR INJUNCTION

**IT IS FURTHER ORDERED** that this Order supersedes the Prior Injunction, except for Section VIII.C of the Prior Injunction, which shall remain in full force and effect.

## XIII. FEES AND COSTS

**IT IS FURTHER ORDERED** that each party to this Order hereby agrees to bear its own costs and attorneys' fees incurred in connection with this action.

## XIV. COOPERATION WITH FTC COUNSEL

**IT IS FURTHER ORDERED** that DIRECTV shall, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the FTC's complaint, cooperate in good faith with the FTC and appear at such places and times as the Commission shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the FTC. If requested in writing by the Commission, DIRECTV shall appear, or cause its officers, employees, representatives, or agents to appear, and provide truthful testimony in any trial, deposition, or other proceeding related to or associated with the transactions or the occurrences that are the subject of the complaint, without the service of a subpoena.

## XV. SEVERABILITY

**IT IS FURTHER ORDERED** that the provisions of this Order are separate and severable from one another. If any provision is stayed or determined to be invalid, the remaining provisions shall remain in full force and effect.

## XVI. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

## XVII. COMPLETE SETTLEMENT

The parties hereby consent to entry of the foregoing Order, which shall constitute a final judgment and order in this matter. The parties further stipulate

and agree that the entry of the foregoing Order shall constitute a full, complete, and final settlement of this action.

//

//

//

**IT IS SO ORDERED**, this 14 day of May, 2009.

United States District Judge
Central District of California

**FOR THE COMMISSION:**

JAMES A. KOHM,
Associate Director for Enforcement
LAURA DEMARTINO,
Assistant Director for Enforcement

MATTHEW J. WILSHIRE, Attorney
ELSIE KAPPLER, Attorney
Federal Trade Commission
Division of Enforcement
601 New Jersey Avenue, N.W.
Suite NJ-2122
Washington, D.C. 20580
202-326-2976 (Wilshire)
202-326-2466 (Kappler)
202-326-2558 (fax)
mwilshire@ftc.gov (Wilshire)
ekappler@ftc.gov (Kappler)

DAVID SHONKA
Acting General Counsel

**FOR THE DEFENDANTS:**

MARIMICHAEL SKUBEL
KIRKLAND & ELLIS, LLC
655 15th St., N.W.
Washington, DC 20005
202-879-5000
202-879-5200 (fax)
mskubel@kirkland.com

Counsel for Defendants

DIRECTV
By: Larry D. Hunter
Executive Vice President and
General Counsel of DIRECTV

//

//

//

**FOR THE PLAINTIFF**
**UNITED STATES OF AMERICA:**

MICHAEL F. HERTZ
Acting Assistant Attorney General
Civil Division
United States Department of Justice

THOMAS P. O'BRIEN
United States Attorney
Central District of California

LEE WEIDMAN
Assistant United States Attorney
Chief, Civil Division

GARY PLESSMAN
Assistant United States Attorney
Chief, Civil Frauds Section
California State Bar No. 101233
Room 7516, Federal Building
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2474
Facsimile: (213) 894-2380
E-mail: gary.plessman@usdoj.gov

EUGENE M. THIROLF
Director
Office of Consumer Litigation

KENNETH L. JOST
Deputy Director
Office of Consumer Litigation

DANIEL K. CRANE-HIRSCH
Trial Attorney
Office of Consumer Litigation
U.S. Department of Justice
PO Box 386
Washington, D.C. 20044
Telephone: 202-616-8242
Facsimile: 202-514-8742
E-mail: Daniel.Crane-Hirsch@usdoj.go

ALTERNATIVE FUELED VEHICLE BUYERS GUIDE

Before Selecting An Alternative Fueled Vehicle Consider:

☑ **FUEL TYPE AND AVAILABILITY:** Know which fuel(s) power this vehicle. Determine whether refueling and/or recharging facilities that meet your driving needs are readily available.

☑ **OPERATING COSTS:** Fuel and maintenance costs for AFVs differ from gasoline or diesel-fueled vehicles and can vary considerably. Visit www.fueleconomy.gov.

☑ **PERFORMANCE/CONVENIENCE:** Vehicles powered by different fuels differ in their ability to start a cold engine, how long it takes to refill the vehicle's tank to full capacity, acceleration rates, and refueling methods.

☑ **ENERGY SECURITY/RENEWABILITY:** Consider where and how the fuel powering this vehicle is typically produced.

☑ **EMISSIONS:** Emissions are an important factor. For more information about how the vehicle you are considering compares to others, visit www.epa.gov/greenvehicle.

**Additional Information**

**DEPARTMENT OF ENERGY (DOE)**
For more information about AFVs, contact DOE's National Alternative Fuels Hotline, 1-800-423-1DOE, or visit DOE's Alternative Fuels Data Center website, www.afdc.doe.gov.

**NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION (NHTSA)**
For more information about vehicle safety, contact NHTSA's Auto Safety Hotline, 1-800-424-9393.

The information on this label is required by the Federal Trade Commission, 16 CFR Part 309.
For more information call toll-free (877) FTC-HELP or visit www.ftc.gov.

← 7.5 inches →

← 7 inches →

**Figure 6**

[60 FR 26955, May 19, 1995, as amended at 69 FR 55339, Sept. 14, 2004]

## PART 310—TELEMARKETING SALES RULE

Sec.

310.1 Scope of regulations in this part.
310.2 Definitions.
310.3 Deceptive telemarketing acts or practices.
310.4 Abusive telemarketing acts or practices.
310.5 Recordkeeping requirements.
310.6 Exemptions.
310.7 Actions by states and private persons.
310.8 Fee for access to the National Do Not Call Registry.
310.9 Severability.

AUTHORITY: 15 U.S.C. 6101–6108.

SOURCE: 68 FR 4669, Jan. 29, 2003, unless otherwise noted.

### § 310.1 Scope of regulations in this part.

This part implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-6108, as amended.

**§310.2 Definitions.**

(a) *Acquirer* means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

(b) *Attorney General* means the chief legal officer of a state.

(c) *Billing information* means any data that enables any person to access a customer's or donor's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

(d) *Caller identification service* means a service that allows a telephone subscriber to have the telephone number, and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

(e) *Cardholder* means a person to whom a credit card is issued or who is authorized to use a credit card on behalf of or in addition to the person to whom the credit card is issued.

(f) *Charitable contribution* means any donation or gift of money or any other thing of value.

(g) *Commission* means the Federal Trade Commission.

(h) *Credit* means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

(i) *Credit card* means any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

(j) *Credit card sales draft* means any record or evidence of a credit card transaction.

(k) *Credit card system* means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

(l) *Customer* means any person who is or may be required to pay for goods or services offered through telemarketing.

(m) *Donor* means any person solicited to make a charitable contribution.

(n) *Established business relationship* means a relationship between a seller and a consumer based on:

(1) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call; or

(2) the consumer's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

(o) *Free-to-pay conversion* means, in an offer or agreement to sell or provide any goods or services, a provision under which a customer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period.

(p) *Investment opportunity* means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

(q) *Material* means likely to affect a person's choice of, or conduct regarding, goods or services or a charitable contribution.

(r) *Merchant* means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(s) *Merchant agreement* means a written contract between a merchant and an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(t) *Negative option feature* means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

(u) *Outbound telephone call* means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

(v) *Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

(w) *Preacquired account information* means any information that enables a seller or telemarketer to cause a charge to be placed against a customer's or donor's account without obtaining the account number directly from the customer or donor during the telemarketing transaction pursuant to which the account will be charged.

(x) *Prize* means anything offered, or purportedly offered, and given, or purportedly given, to a person by chance. For purposes of this definition, chance exists if a person is guaranteed to receive an item and, at the time of the offer or purported offer, the telemarketer does not identify the specific item that the person will receive.

(y) *Prize promotion* means:

(1) A sweepstakes or other game of chance; or

(2) An oral or written express or implied representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.

(z) *Seller* means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

(aa) *State* means any state of the United States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and any territory or possession of the United States.

(bb) *Telemarketer* means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

(cc) *Telemarketing* means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

(dd) *Upselling* means soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction. An "external upsell" is a solicitation made by or on behalf of a seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation are made by the same telemarketer. An "internal upsell" is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

### § 310.3 Deceptive telemarketing acts or practices.

(a) *Prohibited deceptive telemarketing acts or practices*. It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer pays[1] for goods or services offered, failing to disclose

[1] When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by § 310.3(a)(1) before sending a courier to pick up payment or authorization for payment, or

*Continued*

truthfully, in a clear and conspicuous manner, the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;[2]

(ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer;

(iii) If the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

(iv) In any prize promotion, the odds of being able to receive the prize, and, if the odds are not calculable in advance, the factors used in calculating the odds; that no purchase or payment is required to win a prize or to participate in a prize promotion and that any purchase or payment will not increase the person's chances of winning; and the no-purchase/no-payment method of participating in the prize promotion with either instructions on how to participate or an address or local or toll-free telephone number to which customers may write or call for information on how to participate;

(v) All material costs or conditions to receive or redeem a prize that is the subject of the prize promotion;

(vi) In the sale of any goods or services represented to protect, insure, or otherwise limit a customer's liability in the event of unauthorized use of the customer's credit card, the limits on a cardholder's liability for unauthorized use of a credit card pursuant to 15 U.S.C. 1643; and

(vii) If the offer includes a negative option feature, all material terms and conditions of the negative option feature, including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s).

(2) Misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

(iv) Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

(v) Any material aspect of a prize promotion including, but not limited to, the odds of being able to receive a prize, the nature or value of a prize, or that a purchase or payment is required to win a prize or to participate in a prize promotion;

(vi) Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability;

(vii) A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity;

(viii) That any customer needs offered goods or services to provide protections a customer already has pursuant to 15 U.S.C. 1643; or

(ix) Any material aspect of a negative option feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s).

---

directing a customer to have a courier pick up payment or authorization for payment.

[2] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR 226, compliance with the disclosure requirements under the Truth in Lending Act and Regulation Z shall constitute compliance with §310.3(a)(1)(i) of this Rule.

(3) Causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services or a charitable contribution, directly or indirectly, without the customer's or donor's express verifiable authorization, except when the method of payment used is a credit card subject to protections of the Truth in Lending Act and Regulation Z,[3] or a debit card subject to the protections of the Electronic Fund Transfer Act and Regulation E.[4] Such authorization shall be deemed verifiable if any of the following means is employed:

(i) Express written authorization by the customer or donor, which includes the customer's or donor's signature;[5]

(ii) Express oral authorization which is audio-recorded and made available upon request to the customer or donor, and the customer's or donor's bank or other billing entity, and which evidences clearly both the customer's or donor's authorization of payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction and the customer's or donor's receipt of all of the following information:

(A) The number of debits, charges, or payments (if more than one);

(B) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(C) The amount(s) of the debit(s), charge(s), or payment(s);

(D) The customer's or donor's name;

(E) The customer's or donor's billing information, identified with sufficient specificity such that the customer or donor understands what account will be used to collect payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction;

(F) A telephone number for customer or donor inquiry that is answered during normal business hours; and

(G) The date of the customer's or donor's oral authorization; or

(iii) Written confirmation of the transaction, identified in a clear and conspicuous manner as such on the outside of the envelope, sent to the customer or donor via first class mail prior to the submission for payment of the customer's or donor's billing information, and that includes all of the information contained in §§310.3(a)(3)(ii)(A)-(G) and a clear and conspicuous statement of the procedures by which the customer or donor can obtain a refund from the seller or telemarketer or charitable organization in the event the confirmation is inaccurate; *provided*, however, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

(4) Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.

(b) *Assisting and facilitating*. It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule.

(c) *Credit card laundering*. Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:

(1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;

(2) Any person to employ, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into

[3] Truth in Lending Act, 15 U.S.C. 1601 *et seq*., and Regulation Z, 12 CFR part 226.

[4] Electronic Fund Transfer Act, 15 U.S.C. 1693 *et seq*., and Regulation E, 12 CFR part 205.

[5] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or

(3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

(d) *Prohibited deceptive acts or practices in the solicitation of charitable contributions.* It is a fraudulent charitable solicitation, a deceptive telemarketing act or practice, and a violation of this Rule for any telemarketer soliciting charitable contributions to misrepresent, directly or by implication, any of the following material information:

(1) The nature, purpose, or mission of any entity on behalf of which a charitable contribution is being requested;

(2) That any charitable contribution is tax deductible in whole or in part;

(3) The purpose for which any charitable contribution will be used;

(4) The percentage or amount of any charitable contribution that will go to a charitable organization or to any particular charitable program;

(5) Any material aspect of a prize promotion including, but not limited to: the odds of being able to receive a prize; the nature or value of a prize; or that a charitable contribution is required to win a prize or to participate in a prize promotion; or

(6) A charitable organization's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.

### § 310.4 Abusive telemarketing acts or practices.

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Threats, intimidation, or the use of profane or obscene language;

(2) Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until:

(i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

(ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. Nothing in this Rule should be construed to affect the requirement in the Fair Credit Reporting Act, 15 U.S.C. 1681, that a consumer report may only be obtained for a specified permissible purpose;

(3) Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous telemarketing transaction, until seven (7) business days after such money or other item is delivered to that person. This provision shall not apply to goods or services provided to a person by a licensed attorney;

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person;

(5) Disclosing or receiving, for consideration, unencrypted consumer account numbers for use in telemarketing; *provided*, however, that this paragraph shall not apply to the disclosure or receipt of a customer's or donor's billing information to process a payment for goods or services or a charitable contribution pursuant to a transaction;

(6) Causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer or donor. In any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer or donor to be charged for the

goods or services or charitable contribution and to be charged using the identified account. In any telemarketing transaction involving preacquired account information, the requirements in paragraphs (a)(6)(i) through (ii) of this section must be met to evidence express informed consent.

(i) In any telemarketing transaction involving preacquired account information and a free-to-pay conversion feature, the seller or telemarketer must:

(A) obtain from the customer, at a minimum, the last four (4) digits of the account number to be charged;

(B) obtain from the customer his or her express agreement to be charged for the goods or services and to be charged using the account number pursuant to paragraph (a)(6)(i)(A) of this section; and,

(C) make and maintain an audio recording of the entire telemarketing transaction.

(ii) In any other telemarketing transaction involving preacquired account information not described in paragraph (a)(6)(i) of this section, the seller or telemarketer must:

(A) at a minimum, identify the account to be charged with sufficient specificity for the customer or donor to understand what account will be charged; and

(B) obtain from the customer or donor his or her express agreement to be charged for the goods or services and to be charged using the account number identified pursuant to paragraph (a)(6)(ii)(A) of this section; or

(7) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; *provided* that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours.

(b) *Pattern of calls.* (1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

(i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

(ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls established to comply with §310.4(b)(1)(iii);

(iii) Initiating any outbound telephone call to a person when:

(A) that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; or

(B) that person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services unless the seller

(*i*) has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature[6] of that person; or

(*ii*) has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section; or

(iv) Abandoning any outbound telephone call. An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer

[6] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

(v) Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in § 310.4(b)(4)(iii), unless:

(A) in any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

(*i*) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

(*ii*) The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

(*iii*) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

(*iv*) Includes such person's telephone number and signature;[7] and

(B) In any such call to induce the purchase of any good or service, or to induce a charitable contribution from a member of, or previous donor to, a non-profit charitable organization on whose behalf the call is made, the seller or telemarketer:

(*i*) Allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

(*ii*) Within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by § 310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

(*A*) In the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request pursuant to § 310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(*1*) Automatically add the number called to the seller's entity-specific Do Not Call list;

(*2*) Once invoked, immediately disconnect the call; and

(*3*) Be available for use at any time during the message; and

(*B*) In the case of a call that could be answered by an answering machine or voicemail service, that the person called can use a toll-free telephone number to assert a Do Not Call request pursuant to § 310.4(b)(1)(iii)(A). The number provided must connect directly to an automated interactive voice or keypress-activated opt-out mechanism that:

(*1*) Automatically adds the number called to the seller's entity-specific Do Not Call list;

(*2*) Immediately thereafter disconnects the call; and

(*3*) is accessible at any time throughout the duration of the telemarketing campaign; and

(*iii*) Complies with all other requirements of this part and other applicable federal and state laws.

(C) Any call that complies with all applicable requirements of this paragraph (v) shall not be deemed to violate § 310.4(b)(1)(iv) of this part.

(D) This paragraph (v) shall not apply to any outbound telephone call that delivers a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(2) It is an abusive telemarketing act or practice and a violation of this Rule for any person to sell, rent, lease, purchase, or use any list established to comply with § 310.4(b)(1)(iii)(A), or maintained by the Commission pursuant to § 310.4(b)(1)(iii)(B), for any purpose except compliance with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on such lists.

(3) A seller or telemarketer will not be liable for violating § 310.4(b)(1)(ii) and (iii) if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:

[7] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

(i) It has established and implemented written procedures to comply with §310.4(b)(1)(ii) and (iii);

(ii) It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to §310.4(b)(3)(i);

(iii) The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with §310.4(b)(1)(iii)(A);

(iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to §310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

(v) The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to §310.4(b)(3)(i); and

(vi) Any subsequent call otherwise violating §310.4(b)(1)(ii) or (iii) is the result of error.

(4) A seller or telemarketer will not be liable for violating 310.4(b)(1)(iv) if:

(i) The seller or telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured over the duration of a single calling campaign, if less than 30 days, or separately over each successive 30-day period or portion thereof that the campaign continues.

(ii) The seller or telemarketer, for each telemarketing call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call;

(iii) Whenever a sales representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, the seller or telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed[8]; and

(iv) The seller or telemarketer, in accordance with §310.5(b)-(d), retains records establishing compliance with §310.4(b)(4)(i)-(iii).

(c) *Calling time restrictions.* Without the prior consent of a person, it is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in outbound telephone calls to a person's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called person's location.

(d) *Required oral disclosures in the sale of goods or services.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in an outbound telephone call or internal or external upsell to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the seller;

(2) That the purpose of the call is to sell goods or services;

(3) The nature of the goods or services; and

(4) That no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered and that any purchase or payment will not increase the person's chances of winning. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested by that person, the telemarketer must disclose the no-purchase/no-payment entry method for the prize promotion; *provided*, however, that, in any internal upsell for the sale of goods or services, the seller or telemarketer must provide the disclosures listed in this section only to the extent that the information in the upsell differs from the disclosures provided in the initial telemarketing transaction.

[8] This provision does not affect any seller's or telemarketer's obligation to comply with relevant state and federal laws, including but not limited to the TCPA, 47 U.S.C. 227, and 47 CFR part 64.1200.

(e) *Required oral disclosures in charitable solicitations.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer, in an outbound telephone call to induce a charitable contribution, to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the charitable organization on behalf of which the request is being made; and

(2) That the purpose of the call is to solicit a charitable contribution.

[68 FR 4669, Jan. 29, 2003, as amended at 69 FR 16373, Mar. 29, 2004; 73 FR 51204, Aug. 29, 2008]

**§ 310.5 Recordkeeping requirements.**

(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, the following records relating to its telemarketing activities:

(1) All substantially different advertising, brochures, telemarketing scripts, and promotional materials;

(2) The name and last known address of each prize recipient and the prize awarded for prizes that are represented, directly or by implication, to have a value of $25.00 or more;

(3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services;[9]

(4) The name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees directly involved in telephone sales or solicitations; *provided*, however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee; and

(5) All verifiable authorizations or records of express informed consent or express agreement required to be provided or received under this Rule.

(b) A seller or telemarketer may keep the records required by § 310.5(a) in any form, and in the same manner, format, or place as they keep such records in the ordinary course of business. Failure to keep all records required by § 310.5(a) shall be a violation of this Rule.

(c) The seller and the telemarketer calling on behalf of the seller may, by written agreement, allocate responsibility between themselves for the recordkeeping required by this Section. When a seller and telemarketer have entered into such an agreement, the terms of that agreement shall govern, and the seller or telemarketer, as the case may be, need not keep records that duplicate those of the other. If the agreement is unclear as to who must maintain any required record(s), or if no such agreement exists, the seller shall be responsible for complying with §§ 310.5(a)(1)-(3) and (5); the telemarketer shall be responsible for complying with § 310.5(a)(4).

(d) In the event of any dissolution or termination of the seller's or telemarketer's business, the principal of that seller or telemarketer shall maintain all records as required under this section. In the event of any sale, assignment, or other change in ownership of the seller's or telemarketer's business, the successor business shall maintain all records required under this section.

[68 FR 4669, Jan. 29, 2003, as amended at 51204, Aug. 29, 2008]

**§ 310.6 Exemptions.**

(a) Solicitations to induce charitable contributions via outbound telephone calls are not covered by § 310.4(b)(1)(iii)(B) of this Rule.

(b) The following acts or practices are exempt from this Rule:

(1) The sale of pay-per-call services subject to the Commission's Rule entitled "Trade Regulation Rule Pursuant to the Telephone Disclosure and Dispute Resolution Act of 1992," 16 CFR Part 308, *provided*, however, that this exemption does not apply to the requirements of §§ 310.4(a)(1), (a)(7), (b), and (c);

[9] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR 226, compliance with the recordkeeping requirements under the Truth in Lending Act, and Regulation Z, shall constitute compliance with § 310.5(a)(3) of this Rule.

(2) The sale of franchises subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures," ("Franchise Rule") 16 CFR Part 436, *provided*, however, that this exemption does not apply to the requirements of §§ 310.4(a)(1), (a)(7), (b), and (c);

(3) Telephone calls in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization, *provided*, however, that this exemption does not apply to the requirements of §§ 310.4(a)(1), (a)(7), (b), and (c);

(4) Telephone calls initiated by a customer or donor that are not the result of any solicitation by a seller, charitable organization, or telemarketer, *provided*, however, that this exemption does not apply to any instances of upselling included in such telephone calls;

(5) Telephone calls initiated by a customer or donor in response to an advertisement through any medium, other than direct mail solicitation, *provided*, however, that this exemption does not apply to calls initiated by a customer or donor in response to an advertisement relating to investment opportunities, business opportunities other than business arrangements covered by the Franchise Rule, or advertisements involving goods or services described in §§ 310.3(a)(1)(vi) or 310.4(a)(2)-(4); or to any instances of upselling included in such telephone calls;

(6) Telephone calls initiated by a customer or donor in response to a direct mail solicitation, including solicitations via the U.S. Postal Service, facsimile transmission, electronic mail, and other similar methods of delivery in which a solicitation is directed to specific address(es) or person(s), that clearly, conspicuously, and truthfully discloses all material information listed in § 310.3(a)(1) of this Rule, for any goods or services offered in the direct mail solicitation, and that contains no material misrepresentation regarding any item contained in § 310.3(d) of this Rule for any requested charitable contribution; *provided*, however, that this exemption does not apply to calls initiated by a customer in response to a direct mail solicitation relating to prize promotions, investment opportunities, business opportunities other than business arrangements covered by the Franchise Rule, or goods or services described in §§ 310.3(a)(1)(vi) or 310.4(a)(2)-(4); or to any instances of upselling included in such telephone calls; and

(7) Telephone calls between a telemarketer and any business, except calls to induce the retail sale of nondurable office or cleaning supplies; *provided*, however, that § 310.4(b)(1)(iii)(B) and § 310.5 of this Rule shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.

**§ 310.7 Actions by states and private persons.**

(a) Any attorney general or other officer of a state authorized by the state to bring an action under the Telemarketing and Consumer Fraud and Abuse Prevention Act, and any private person who brings an action under that Act, shall serve written notice of its action on the Commission, if feasible, prior to its initiating an action under this Rule. The notice shall be sent to the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, D.C. 20580, and shall include a copy of the state's or private person's complaint and any other pleadings to be filed with the court. If prior notice is not feasible, the state or private person shall serve the Commission with the required notice immediately upon instituting its action.

(b) Nothing contained in this Section shall prohibit any attorney general or other authorized state official from proceeding in state court on the basis of an alleged violation of any civil or criminal statute of such state.

**§ 310.8 Fee for access to the National Do Not Call Registry.**

(a) It is a violation of this Rule for any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly or through another person, first has paid the annual fee, required by

§ 310.8(c), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission under § 310.4(b)(1)(iii)(B); *provided*, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§ 310.4(b)(1)(iii)(B)(*i*) or (*ii*), and the seller does not access the National Do Not Call Registry for any other purpose.

(b) It is a violation of this Rule for any telemarketer, on behalf of any seller, to initiate an outbound telephone call to any person whose telephone number is within a given area code unless that seller, either directly or through another person, first has paid the annual fee, required by § 310.8(c), for access to the telephone numbers within that area code that are included in the National Do Not Call Registry; *provided*, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§ 310.4(b)(1)(iii)(B)(*i*) or (*ii*), and the seller does not access the National Do Not Call Registry for any other purpose.

(c) The annual fee, which must be paid by any person prior to obtaining access to the National Do Not Call Registry, is $54 for each area code of data accessed, up to a maximum of $14,850; *provided*, however, that there shall be no charge to any person for accessing the first five area codes of data, and *provided further*, that there shall be no charge to any person engaging in or causing others to engage in outbound telephone calls to consumers and who is accessing area codes of data in the National Do Not Call Registry if the person is permitted to access, but is not required to access, the National Do Not Call Registry under this Rule, 47 CFR 64.1200, or any other Federal regulation or law. Any person accessing the National Do Not Call Registry may not participate in any arrangement to share the cost of accessing the registry, including any arrangement with any telemarketer or service provider to divide the costs to access the registry among various clients of that telemarketer or service provider.

(d) Each person who pays, either directly or through another person, the annual fee set forth in § 310.8(c), each person excepted under § 310.8(c) from paying the annual fee, and each person excepted from paying an annual fee under § 310.4(b)(1)(iii)(B), will be provided a unique account number that will allow that person to access the registry data for the selected area codes at any time for the twelve month period beginning on the first day of the month in which the person paid the fee ("the annual period"). To obtain access to additional area codes of data during the first six months of the annual period, each person required to pay the fee under § 310.8(c) must first pay $54 for each additional area code of data not initially selected. To obtain access to additional area codes of data during the second six months of the annual period, each person required to pay the fee under § 310.8(c) must first pay $27 for each additional area code of data not initially selected. The payment of the additional fee will permit the person to access the additional area codes of data for the remainder of the annual period.

(e) Access to the National Do Not Call Registry is limited to telemarketers, sellers, others engaged in or causing others to engage in telephone calls to consumers, service providers acting on behalf of such persons, and any government agency that has law enforcement authority. Prior to accessing the National Do Not Call Registry, a person must provide the identifying information required by the operator of the registry to collect the fee, and must certify, under penalty of law, that the person is accessing the registry solely to comply with the provisions of this Rule or to otherwise prevent telephone calls to telephone numbers on the registry. If the person is accessing the registry on behalf of sellers, that person also must identify each of the sellers on whose behalf it is accessing the registry, must provide each seller's unique account number for access to the national registry, and must certify, under penalty of law, that the sellers will be using the information gathered from the registry solely to comply with the provisions of

this Rule or otherwise to prevent telephone calls to telephone numbers on the registry.

[68 FR 45144, July 31, 2003, as amended at 69 FR 45585, July 30, 2004; 70 FR 43280, July 27, 2005; 71 FR 43054, July 31, 2006; 73 FR 43355, July 25, 2008]

**§310.9 Severability.**

The provisions of this Rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.

## PART 311—TEST PROCEDURES AND LABELING STANDARDS FOR RECYCLED OIL

Sec.
311.1 Definitions.
311.2 Stayed or invalid parts.
311.3 Preemption.
311.4 Testing.
311.5 Labeling.
311.6 Prohibited acts.

AUTHORITY: 42 U.S.C. 6363(d).

SOURCE: 60 FR 55421, Oct. 31, 1995, unless otherwise noted.

**§311.1 Definitions.**

As used in this part:

(a) *Manufacturer* means any person who re-refines or otherwise processes used oil to remove physical or chemical impurities acquired through use or who blends such re-refined or otherwise processed used oil with new oil or additives.

(b) *New oil* means any synthetic oil or oil that has been refined from crude oil and which has not been used and may or may not contain additives. Such term does not include used oil or recycled oil.

(c) *Processed used* oil means re-refined or otherwise processed used oil or blend of oil, consisting of such re-refined or otherwise processed used oil and new oil or additives.

(d) *Recycled oil* means processed used oil that the manufacturer has determined, pursuant to section 311.4 of this part, is substantially equivalent to new oil for use as engine oil.

(e) *Used oil* means any synthetic oil or oil that has been refined from crude oil, which has been used and, as a result of such use, has been contaminated by physical or chemical impurities.

(f) *Re-refined oil* means used oil from which physical and chemical contaminants acquired through use have been removed.

**§311.2 Stayed or invalid parts.**

If any part of this rule is stayed or held invalid, the rest of it will remain in force.

**§311.3 Preemption.**

No law, regulation, or order of any State or political subdivision thereof may apply, or remain applicable, to any container of recycled oil, if such law, regulation, or order requires any container of recycled oil, which container bears a label in accordance with the terms of §311.5 of this part, to bear any label with respect to the comparative characteristics of such recycled oil with new oil that is not identical to that permitted by §311.5 of this part.

**§311.4 Testing.**

To determine the substantial equivalency of processed used oil with new oil for use as engine oil, manufacturers or their designees must use the test procedures that were reported to the Commission by the National Institutes of Standards and Technology ("NIST") on July 27, 1995, entitled "Engine Oil Licensing and Certification System," American Petroleum Institute ("API"), Publication 1509, Thirteenth Edition, January 1995. API Publication 1509, Thirteenth Edition has been updated to API Publication 1509, Fifteenth Edition, April 2002. API Publication 1509, Fifteenth Edition, April 2002, is incorporated by reference. This incorporation by reference is approved by the Director of the Federal Register in accordance with 5 U.S.C. 552(a) and 1 CFR part 51. Copies of the materials incorporated by reference may be obtained from: API, 1220 L Street, NW., Washington, DC 20005. Copies may be inspected at the Federal Trade Commission, Consumer Response Center, Room 130, 600 Pennsylvania Avenue, NW., Washington, DC 20580, or at the National Archives and Records Administration ("NARA"). For information on the availability of this material at